**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SEWMATTIE LILIAH, SHYMEEKA FAIRLEY,
*on behalf of themselves,*
*FLSA Collective Plaintiffs, and the Class,*

                            Plaintiffs,

     v.

PERSONAL TOUCH HOME CARE OF LONG
ISLAND, INC., and
ROBERT CAIONE,

                            Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiffs SEWMATTIE LILIAH ("Plaintiff LILIAH") and SHYMEEKA FAIRLEY ("Plaintiff FAIRLEY") (collectively, "Plaintiff"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, PERSONAL TOUCH HOME CARE OF LONG ISLAND, INC. ("Corporate Defendant"), and ROBERT CAIONE ("Individual Defendant," and collectively with the Corporate Defendant, the "Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from

1

Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) compensation for late payment of wages; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff SEWMATTIE LILIAH is a resident of Queens County, New York.

6.      Plaintiff SHYMEEKA FAIRLEY is a resident of Kings County, New York.

7.      Defendants operate six home care service facilities in New York. The Facilities are located at the following addresses:

(a) Long Island City – 36-36 33rd Street, Long Island City, NY 11106;

(b) Brooklyn – 3632 Nostrand Avenue, Brooklyn, NY 11229;

(c) West Hempstead – 60 Hempstead Avenue, W. Hempstead, NY 11552;

(d) White Plains – 7-11 South Broadway, White Plains, NY 10601;

(e) Hauppauge – 300 Wheeler Road, Hauppauge, NY 11788; and

(f) Shirley – 40 Montauk Highway, Shirley, NY 11967

  (collectively, the "Facilities").

8. Corporate Defendant PERSONAL TOUCH HOME CARE OF LONG ISLAND, INC. is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 1985 Marcus Avenue, Suite 202, Lake Success, NY 11042, and an address for service of process located at 80 State Street, Albany, NY 12207.

9. Individual Defendant ROBERT CAIONE is the Chief Executive Officer of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant ROBERT CAIONE exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiffs, FLSA Collective Plaintiffs, and Class Members of Corporate Defendant. Individual Defendant ROBERT CAIONE has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ROBERT CAIONE additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ROBERT CAIONE ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendant is operating efficiently and profitably.

10. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

11. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

12. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to registration specialists, personal care aide, and home health aides among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving. The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

16.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including, but not limited to registration specialists, personal care aide, and home health aides among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class.

19.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay wages, including overtime, due to time shaving; (ii) late payment of wages; (iii) failing to provide wage and hour notices, at date of

hiring and annually, per requirements of the NYLL; and (iii) failing to provide proper wage statements per requirements of the NYLL.

20.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

    b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and the Class Members;

    c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class Members for their work;

    d) Whether Defendants properly notified Plaintiffs and Class Members of their hourly rate and overtime rate;

e) Whether Defendants paid Plaintiffs and Class Members proper wages for all hours worked, including overtime hours;

f) Whether Defendants caused time shaving by paying Plaintiffs and Class Members only for those hours which they were scheduled to work, rather than for the actual hours that they worked;

g) Whether Defendants paid Plaintiffs and Class Members their lawful wages in a timely manner;

h) Whether Defendants provided wage and hour notices to Plaintiffs and Class Members, at date of hiring and annually, per requirements of the NYLL; and

i) Whether Defendants provided proper wage statements to Plaintiffs and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

*Plaintiff SEWMATTIE LILIAH*

25. In or around July 27, 2022, Plaintiff LILIAH was hired by Defendants to work as registration specialist. Plaintiff LILIAH worked mostly at the West Hempstead facility located at 60 Hempstead Avenue, W. Hempstead, NY 11552. Plaintiff LILIAH received training at the Long Island facility located at 36-36 33rd Street, Long Island City, NY 11106, and the Hauppauge facility located at 300 Wheeler Road, Hauppauge, NY 11788. Plaintiff LILIAH's employment with Defendants terminated on December 27, 2022.

26. Throughout her employment, Plaintiff LILIAH was scheduled to work eight hours a day for five days a week, for a total of forty hours per week. FLSA Collective Plaintiffs and Class Members worked a similar number of hours each week.

27. Throughout her employment, Plaintiff LILIAH was paid at rate of eighteen dollars per hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

28. Throughout her employment with Defendants, Plaintiff LILIAH was not always paid the overtime premium of one-and-one-half times her regular rate of pay for her hours worked in excess of forty per week due to time shaving, as required under the FLSA and NYLL.

29. Throughout her employment with Defendants, Plaintiff LILIAH was only paid for her scheduled shifts. However, Plaintiff LILIAH was working before and after her scheduled shifts. Plaintiff LILIAH would come in everyday and work fifteen minutes before her scheduled shift, and work five minutes past her shift, for a total of 1.6 hours of timeshaved hours per week. FLSA Collective Plaintiffs and Class Members were similarly not paid for working before and after their scheduled shifts.

30. Throughout her employment, Plaintiff LILIAH was further time shaved because she was deducted for meal breaks she did not take. Plaintiff LILIAH deducted thirty minutes for meal breaks. However, Plaintiff LILIAH was required to work through her lunch breaks. Therefore, Plaintiff LILIAH was time shaved an additional 5.25 hours per week. FLSA Collective Plaintiffs and Class Members also suffered similarly from Defendants' illegal policy of time shaving for meal breaks they could not take.

*Plaintiff SHYMEEKA FAIRLEY*

31. In or around June 2017, Plaintiff FAIRLEY was hired by Defendants to work as a home health aide. Plaintiff FAIRLEY's employment with Defendants terminated in or around December 2018. Plaintiff FAIRLEY was rehired in or around December 2019 as a home health aide. Plaintiff's employment was terminated in or around August 2020.

32. Throughout her employment, Plaintiff FAIRLEY was scheduled to work six hours a day for five days a week, for a total of thirty-five hours per week. FLSA Collective Plaintiffs and Class Members worked a similar number of hours each week.

33. From in or around June 2017 until in or around December 2018, Plaintiff FAIRLEY was paid at rate of sixteen dollars per hour. From in or around December 2019 until in or around August 2020, Plaintiff FAIRLEY was paid at a rate of seventeen dollars and fifty centers per hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

34. Throughout her employment with Defendants, Plaintiff FAIRLEY was only paid for her scheduled shifts. However, Plaintiff FAIRLEY was working before and after her scheduled shifts. Plaintiff FAIRLEY would stay and work an hour past her shift three times a week, for a total of 3 hours of timeshaved hours per week. FLSA Collective Plaintiffs and Class Members were similarly not paid for working before and after their scheduled shifts.

*Class Claims*

35. Throughout Plaintiffs employment with Defendants, they were not compensated for all overtime hours worked due to Defendants' time shaving policies. As mentioned above, throughout their employment, Plaintiffs were only paid for their scheduled hours. However, Plaintiffs were working before and after their scheduled shifts. Plaintiffs, FLSA Collective Plaintiffs and Class Members also suffered similarly from Defendants' illegal policy of time shaving for unscheduled hours.

36. At all relevant times, Defendants also failed to timely pay Plaintiff FAIRLEY her wages. For example, Plaintiff FAIRLEY regularly did not receive her wages within seven days of the end of the week in which Plaintiff FAIRLEY earned them, in violation of NYLL §

191(1)(a)(i)[1]. From their observations and conversations with co-workers, Plaintiff FAIRLEY knows that Class Members similarly did not receive their wages within seven days during the week in which they were earned, because it was a common policy of Defendants. Therefore, Plaintiff FAIRLEY and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

37. In failing to provide proper wage statements and notices to Plaintiffs and Class members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiffs; interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

38. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

39. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

40.     For example, Plaintiffs have alleged that they performed significant off-the-clock work for which she was not compensated. This means they have alleged that the number of hours listed on the wage statements they received from Defendants were inaccurate, having understated the number of hours Plaintiffs actually worked. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent themselves as having paid Plaintiffs and other employees all wages due when Defendants had not, in fact, done that.

41.     Had the wage statements accurately represented Plaintiffs' actual hours, they would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiffs worked and the number of hours for which they were paid—thus providing Plaintiffs with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiffs and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

42.     This legal leverage alone might well have incentivized Defendants to make Plaintiffs and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

43.     Regardless of what Defendants would have done with Plaintiffs in possession of such leverage, Plaintiffs have described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiffs in a far stronger one. Plaintiffs have been concretely injured because Defendants' deceptive representations on Plaintiffs' wage statements have prevented this outcome.

44. Of course, Defendants WTPA violations could not prevent Plaintiffs from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiffs of.

45. Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that is an argument for another day, as the Court must accept Plaintiffs' allegations as true at this stage of the litigation.

46. There is no question that Plaintiffs would be in a far better position than they are now had they received compliant wage statements. At worst, Plaintiffs would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiffs might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiffs whole.

47. Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiffs and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

48. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs and Class Members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek, due to time shaving, in violation of the FLSA and NYLL.

49. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff FAIRLEY and Class Members their wages within seven days of the end of the week in which they earned them.

50. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiffs and Class Members as required under the NYLL.

51. Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiffs and Class Members as required under the NYLL, as the wage statements did not accurately reflect the number of hours worked by employees.

52. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and the Class, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

53. Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

54. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

56. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.00.

57. At all relevant times, Defendants had a policy and practice of failing to pay overtime wages to Plaintiff LILIAH and FLSA Collective Plaintiffs for hours worked in excess of forty per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay.

58. At all relevant times, Defendants had a policy and practice of failing to pay wages, including overtime, to Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked due to time shaving.

59. Records, if any exist, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiffs will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all overtime hours, when Defendants knew or should have known such was due to Defendants' policy of time shaving.

61. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

62. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

63. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

64. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).p

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW

65. Plaintiffs repeat each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

66. At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

67. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiffs and Class Members the full amount of overtime due under the NYLL.

68. Defendants willfully violated the rights of Plaintiffs and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time shaving.

69. Defendants willfully violated Plaintiff FAIRLEY's and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

70. Defendants knowingly and willfully failed to provide wage and hour notices, at the date of hiring and annually thereafter, to Plaintiffs and Class Members, as required by NYLL § 195(1).

71. Defendants knowingly and willfully failed to provide proper wage statements to

Plaintiffs and Class Members with every wage payment, as required by NYLL § 195(3). Defendants provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiffs and Class Members.

72. Due to the Defendants' NYLL violations, Plaintiffs and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to time shaving; damages for unreasonably delayed payments; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to time shaving under the FLSA and NYLL;

d. An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

e. An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements;

 f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the NYLL;

 g. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

 h. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

 i. Designation of this action as a class action pursuant to F.R.C.P. 23;

 j. Designation of Plaintiffs as Representatives of the Class; and

 k. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: May 1, 2023

> Respectfully submitted,
> By: /s/ C.K. Lee
> C.K. Lee, Esq.
>
> **LEE LITIGATION GROUP, PLLC**
> C.K. Lee (CL 4086)
> Anne Seelig (AS 3976)
> 148 West 24th Street, 8th Floor
> New York, NY 10011
> Tel.: 212-465-1188
> Fax: 212-465-1181
> *Attorneys for Plaintiff,*
> *FLSA Collective Plaintiffs,*
> *and the Class*